IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Sean McClendon, | ) |
|       *Plaintiff*, | ) ) ) |
|       -vs- | ) No. _____ ) |
| City of Chicago, Milot Cadichon, #17711, Bryant McDermott, #12659, Robert McHale, #15902, Donald Smith, #10257, | ) *(jury demand)* ) ) ) ) |
|       *Defendants*. | ) ) |

## COMPLAINT

Plaintiff, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 and § 1367.

2. Plaintiff Sean McClendon is a resident of the Northern District of Illinois.

3. Defendants Milot Cadichon, #17711, Bryant McDermott, #12659, Robert McHale, #15902, Donald Smith, #10257 ("officer defendants") were, at all relevant times, acting under color of their offices as Chicago police officers.

4. Defendant City of Chicago is an Illinois municipal corporation.

5. On October 10, 2014, the officer defendants arrested plaintiff outside a residence on the 3000 block of East 78th Street in Chicago.

6. At the time of plaintiff's arrest:

    a. None of the officer defendants had a warrant authorizing the arrest of plaintiff;

    b. None of the officer defendants believed that a warrant had been issued authorizing the arrest of plaintiff;

    c. None of the officer defendants had observed plaintiff commit any offense; and

    d. None of the officer defendants had received information from any source that plaintiff had committed an offense or was otherwise subject to arrest.

7. After arresting plaintiff, the officer defendants conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, and to cause plaintiff to be wrongfully detained and prosecuted.

8. The false story fabricated by the officer defendants included their concocted claims that defendant Cadichon saw plaintiff in possession of a gun and that plaintiff admitted to possessing the gun to defendants McHale and McDermott.

9. Plaintiff did not possess a gun and did not admit to possessing a gun.

10. The acts of the officer defendants in furtherance of their scheme to frame plaintiff included the following:

   a. One or more of the officer defendants prepared official police reports containing the false story, and each of the other officer defendants failed to intervene to prevent the violation of plaintiff's rights;

   b. One or more of the officer defendants attested to the false story through the official police reports, and each of the other officer defendants failed to intervene to prevent the violation of plaintiff's rights; and

   c. One or more of the officer defendants communicated the false story to prosecutors, and each of the other officer defendants failed to intervene to prevent the violation of plaintiff's rights.

11. Plaintiff challenged the false police story at trial, testifying truthfully that he did not possess a gun and did not admit to possessing a gun.

12. Nevertheless, the jury found plaintiff guilty, and plaintiff was sentenced to a term of eight years in the Illinois Department of Corrections.

13. Plaintiff was deprived of liberty because of the above-described wrongful acts of the officer defendants.

14. The Illinois Appellate Court reversed plaintiff's conviction and vacated his sentence without remand on March 7, 2022.

15. At all relevant times, the Chicago Police Department maintained official policies, practices, and customs that facilitated, encouraged, and condoned the officer defendants' misconduct.

16. Specifically, defendant City of Chicago has known and encouraged a code of silence among its police officers that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

17. At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

18. This code of silence facilitated, encouraged, and enabled the officer defendants to engage in misconduct for many years, knowing that their fellow officers would cover for them and help conceal their wrongdoing.

19. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that, as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

20. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

21. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

22. As determined by the United States Department of Justice in its official report entitled "Investigation of the Chicago Police Department," January 13, 2017, at 75:

    a. "One way to cover up police misconduct is when officers affirmatively lie about it or intentionally omit material facts."

    b. "The Mayor has acknowledged that a 'code of silence' exists within CPD, and his opinion is shared by current officers and former high-level CPD officials interviewed during our investigation."

    c. "Indeed, in an interview made public in December 2016, the President of the police officer's union admitted to such a code of silence within CPD, saying 'there's a code of silence everywhere, everybody has it . . . so why would the [Chicago Police] be any different.'"

23. The United States Department of Justice concluded that "a code of silence exists, and officers and community members know it." Report at 75.

24. On March 29, 2019, then-Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago police officers "look the other way" when they observe misconduct by other Chicago police officers.

25. In October 2020, Chicago Police Superintendent David Brown acknowledged in public comments that the code of silence continues to exist.

26. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, Superintendent Johnson, Superintendent Brown, the Task Force, and the Department of Justice was

-6-

also in place when plaintiff suffered the wrongful arrest, detention, and prosecution described above.

27. By maintaining its code of silence, defendant City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

28. The code of silence gave defendants Cadichon, McDermott, McHale, and Smith comfort and a sense that they could violate plaintiff's rights and not be disciplined.

29. The code of silence emboldened defendants Cadichon, McDermott, McHale, and Smith to frame plaintiff.

30. The code of silence provided defendants Cadichon, McDermott, McHale, and Smith with good reason to believe that they would effectively be immune from any sanction for their wrongdoing.

31. The code of silence encourages Chicago police officers to frame innocent persons because the officers know they will not be meaningfully disciplined, and it encouraged defendants Cadichon, McDermott, McHale, and Smith to frame plaintiff.

32. As a direct and proximate result of the City's code of silence, defendants Cadichon, McDermott, McHale, and Smith concocted the false story and fabricated evidence against plaintiff.

33. As a result of the foregoing, plaintiff was deprived of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States.

34. As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiff was subjected to a malicious prosecution under Illinois law.

35. Plaintiff hereby demands trial by jury.

WHEREFORE, plaintiff requests that appropriate compensatory and punitive damages be awarded against the officer defendants, that appropriate compensatory damages only be awarded against defendant City of Chicago, and that fees and costs be taxed against all defendants.

    /s/ <u>Joel A. Flaxman</u>
    Joel A. Flaxman
    ARDC No. 6292818
    Kenneth N. Flaxman
    200 S Michigan Ave Ste 201
    Chicago, IL 60604-2430
    (312) 427-3200
    *Attorneys for Plaintiff*